## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| *Plaintiff* | CIVIL ACTION NO.: 09-969 (SDW) |
| KARE DISTRIBUTION, INC., | |
| vs. | |
| *Defendants* | |
| JAM LABELS AND CARDS LLC d/b/a A&M CARDS, ARTHUR AARON and MARC STEINBERG | **ANSWER, SEPARATE DEFENSES TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM** |

Defendants JAM Labels and Cards LLC d/b/a A&M Cards ("A&M"), Arthur Aaron ("Aaron"), and Marc Steinberg ("Steinberg") (collectively, "Defendants"), by and through their attorneys, Phillips Nizer LLP, by way of Answer to the Complaint of Plaintiff Kare Distribution, Inc. ("Plaintiff"), herein respond as follows:

### "THE PARTIES"

1.  Defendants are without sufficient knowledge or information to form a belief as to these allegations and accordingly leave Plaintiff to its proofs.

2.  Defendants deny the allegations contained in paragraph 2 of Plaintiff's Complaint and respond that Jam Labels and Cards LLC and A&M are wholly separate and apart entities, that A&M is a New Jersey corporation and that A&M maintains its principal place of business at 5 Horizon Road, Suite 711, Fort Lee, New Jersey.

1079964.1

3.    Defendants admit the allegations contained in paragraph 3 of Plaintiff's Complaint.

4.    Defendants admit the allegations contained in paragraph 4 of Plaintiff's Complaint.

5.    No allegations are set forth, however, to the extent any allegations are set forth, same are denied.

### "JURISDICTION AND VENUE"

6.    The allegations contained in paragraph 6 of Plaintiff's Complaint call for conclusions of law to which a response is not required.  To the extent the allegations contained in paragraph 6 are intended to impose liability upon the Defendants, such allegations are denied.

7.    The allegations contained in paragraph 7 of Plaintiff's Complaint call for conclusions of law to which a response is not required.  To the extent the allegations contained in paragraph 7 are intended to impose liability upon the Defendant, such allegations are denied.

### "FACTUAL BACKGROUND"

8.    Defendants are without sufficient knowledge or information to form a belief as to these allegations and accordingly leave Plaintiff to its proofs.

9.    Defendants are without sufficient knowledge or information to form a belief as to these allegations and accordingly leave Plaintiff to its proofs.

10.    Defendants are without sufficient knowledge or information to form a belief as to these allegations and accordingly leave Plaintiff to its proofs.

11.    Defendants are without sufficient knowledge or information to form a belief as to these allegations and accordingly leave Plaintiff to its proofs.

1079964.1

12.   Defendants are without sufficient knowledge or information to form a belief as to these allegations and accordingly leave Plaintiff to its proofs.

13.   Defendants are without sufficient knowledge or information to form a belief as to these allegations and accordingly leave Plaintiff to its proofs.

14.   A&M admits that it "offers printing services," but denies all other allegations.

15.   A&M admits that Plaintiff has used its "printing services," that A&M and Plaintiff "never had a formal written agreement" and that "[t]he parties' course of dealings and communications with each other, [among other things]...are [] evidence of the scope and nature of their relationship," but denies all other allegations.

16.   Defendants refer Plaintiff to the referenced "purchase order" and "invoice," which documents speak for themselves.

17.   Admitted, except to state that Kare & A&M had several oral agreements governing the terms of their relationship.

18.   Defendants admit the allegations contained in paragraph 18 of Plaintiff's Complaint.

19.   Defendants deny the allegations contained in paragraph 19 of Plaintiff's Complaint, except to deny sufficient knowledge or information to form a belief as to any "assessments," performed by Plaintiff.

20.   Defendants deny the allegations contained in paragraph 20 of Plaintiff's Complaint.

21.   Defendants deny the allegations contained in paragraph 21 of Plaintiff's Complaint.

3

1079964.1

22.     Defendants are without sufficient knowledge or information to form a belief as to these allegations and accordingly leave Plaintiff to its proofs.

23.     Defendants deny the allegations contained in paragraph 23 of Plaintiff's Complaint.

24.     Defendants deny the allegations contained in paragraph 24 of Plaintiff's Complaint.

25.     Defendants deny the allegations contained in paragraph 25 of Plaintiff's Complaint.

26.     Defendants deny the allegations contained in paragraph 26 of Plaintiff's Complaint.

27.     Defendants deny the allegations contained in paragraph 27 of Plaintiff's Complaint.

28.     A&M only admits that it rejected the referenced "draft written agreement," and denies all other allegations.

29.     A&M only admits that it provided Plaintiff with free shipping under certain conditions, and denies all other allegations.

30.     Defendants deny the allegations contained in paragraph 30 of Plaintiff's Complaint.

31.     Defendants deny the allegations contained in paragraph 31 of Plaintiff's Complaint.

32.     Defendants deny the allegations contained in paragraph 32 of Plaintiff's Complaint.

**4**

33.     Defendants deny the allegations contained in paragraph 33 of Plaintiff's Complaint.

34.     Defendants deny the allegations contained in paragraph 34 of Plaintiff's Complaint.

35.     Defendants deny the allegations contained in paragraph 35 of Plaintiff's Complaint.

36.     Defendants deny the allegations contained in paragraph 36 of Plaintiff's Complaint.

37.     Defendants deny the allegations contained in paragraph 37 of Plaintiff's Complaint.

38.     Defendants deny the allegations contained in paragraph 38 of Plaintiff's Complaint.

39.     Defendants deny the allegations contained in paragraph 39 of Plaintiff's Complaint.

40.     Defendants deny the allegations contained in paragraph 40 of Plaintiff's Complaint.

41.     Defendants deny the allegations contained in paragraph 41 of Plaintiff's Complaint.

42.     Defendants refer Plaintiff to the referenced "writing," which document speaks for itself.

43.     Defendants deny the allegations contained in paragraph 43 of Plaintiff's Complaint.

1079964.1

44.     Defendants deny the allegations contained in paragraph 44 of Plaintiff's Complaint.

## "FIRST CLAIM FOR RELIEF"

45.     Defendants repeat their answers to the above allegations as if set forth herein at length.

46.     Defendants deny the allegations contained in paragraph 46 of Plaintiff's Complaint.

47.     Defendants deny the allegations contained in paragraph 47 of Plaintiff's Complaint.

48.     Defendants deny the allegations contained in paragraph 48 of Plaintiff's Complaint.

49.     Defendants deny the allegations contained in paragraph 49 of Plaintiff's Complaint.

50.     Defendants deny the allegations contained in paragraph 50 of Plaintiff's Complaint.

51.     Defendants deny the allegations contained in paragraph 51 of Plaintiff's Complaint.

52.     Defendants deny the allegations contained in paragraph 52 of Plaintiff's Complaint.

53.     Defendants deny the allegations contained in paragraph 53 of Plaintiff's Complaint.

1079964.1

54. Defendants deny the allegations contained in paragraph 54 of Plaintiff's Complaint.

## "SECOND CLAIM FOR RELIEF"

55. Defendants repeat their answers to the above allegations as if set forth herein at length.

56. Defendants deny the allegations contained in paragraph 56 of Plaintiff's Complaint.

57. Defendants deny the allegations contained in paragraph 57 of Plaintiff's Complaint.

58. Defendants deny the allegations contained in paragraph 58 of Plaintiff's Complaint.

59. Defendants deny the allegations contained in paragraph 59 of Plaintiff's Complaint.

60. Defendants deny the allegations contained in paragraph 60 of Plaintiff's Complaint.

61. Defendants deny the allegations contained in paragraph 61 of Plaintiff's Complaint.

62. Defendants deny the allegations contained in paragraph 62 of Plaintiff's Complaint.

## "THIRD CLAIM FOR RELIEF"

63. Defendants repeat their answers to the above allegations as if set forth herein at length.

7

1079964.1

64.     It is unclear and ambiguous as to what "agreement" Plaintiff is referring to and, as such, Defendants are compelled to deny all allegations.

65.     Defendants deny the allegations contained in paragraph 65 of Plaintiff's Complaint.

66.     Defendants deny the allegations contained in paragraph 66 of Plaintiff's Complaint.

67.     Defendants deny the allegations contained in paragraph 67 of Plaintiff's Complaint.

68.     Defendants deny the allegations contained in paragraph 68 of Plaintiff's Complaint.

## "FOURTH CLAIM FOR RELIEF"

69.     Defendants repeat their answers to the above allegations as if set forth herein at length.

70.     Defendants deny the allegations contained in paragraph 70 of Plaintiff's Complaint.

71.     Defendants deny the allegations contained in paragraph 71 of Plaintiff's Complaint.

72.     Defendants deny the allegations contained in paragraph 72 of Plaintiff's Complaint.

73.     Defendants deny the allegations contained in paragraph 73 of Plaintiff's Complaint.

1079964.1

## "FIFTH CLAIM FOR RELIEF"

74.     Defendants repeat their answers to the above allegations as if set forth herein at length.

75.     Defendants are without sufficient knowledge or information to form a belief as to these allegations and accordingly leave Plaintiff to its proofs.

76.     Defendants deny the allegations contained in paragraph 76 of Plaintiff's Complaint.

77.     Defendants deny the allegations contained in paragraph 77 of Plaintiff's Complaint.

78.     Defendants deny the allegations contained in paragraph 78 of Plaintiff's Complaint.

79.     Defendants deny the allegations contained in paragraph 79 of Plaintiff's Complaint.

80.     Defendants deny the allegations contained in paragraph 80 of Plaintiff's Complaint.

## "SIXTH CLAIM FOR RELIEF"

81.     Defendants repeat their answers to the above allegations as if set forth herein at length.

82.     It is unclear and ambiguous as to what "agreement" Plaintiff is referring to and, as such, Defendants are compelled to deny all allegations.

83.     Defendants deny the allegations contained in paragraph 83 of Plaintiff's Complaint.

9

1079964.1

84.    Defendants deny the allegations contained in paragraph 84 of Plaintiff's Complaint.

## **"SEVENTH CLAIM FOR RELIEF"**

85.    Defendants repeat their answers to the above allegations as if set forth herein at length.

86.    Defendants deny the allegations contained in paragraph 86 of Plaintiff's Complaint.

87.    Defendants deny the allegations contained in paragraph 87 of Plaintiff's Complaint.

88.    Defendants deny the allegations contained in paragraph 88 of Plaintiff's Complaint.

89.    Defendants deny the allegations contained in paragraph 89 of Plaintiff's Complaint.

90.    Defendants deny the allegations contained in paragraph 90 of Plaintiff's Complaint.

91.    Defendants deny the allegations contained in paragraph 91 of Plaintiff's Complaint.

1079964.1

## SEPARATE DEFENSES

### FIRST SEPARATE DEFENSE

Plaintiff has failed to state a cause of action upon which relief may be granted.

### SECOND SEPARATE DEFENSE

The claims of Plaintiff are barred by the applicable statues of limitations.

### THIRD SEPARATE DEFENSE

The claims of Plaintiff are barred by the doctrine of estoppel.

### FOURTH SEPARATE DEFENSE

The claims of Plaintiff are barred by the doctrine of laches.

### FIFTH SEPARATE DEFENSE

The claims of Plaintiff are barred and/or limited by the provisions and/or operation of the applicable agreement(s).

### SIXTH SEPARATE DEFENSE

The claims of Plaintiff are barred and/or limited by the provisions and/or operation of applicable statute(s).

### SEVENTH SEPARATE DEFENSE

The claims of Plaintiff are barred by Plaintiff's own conduct and/or that of its agents or representatives.

### EIGHTH SEPARATE DEFENSE

The claims of Plaintiff are barred by accord and satisfaction.

### NINTH SEPARATE DEFENSE

The claims of Plaintiff are barred by payment.

**11**

### TENTH SEPARATE DEFENSE

The claims of Plaintiff are barred by release.

### ELEVENTH SEPARATE DEFENSE

The claims of Plaintiff are barred by fraud.

### TWELFTH SEPARATE DEFENSE

The claims of Plaintiff are barred by misrepresentation.

### THIRTEENTH SEPARATE DEFENSE

The claims of Plaintiff are barred by concealment.

### FOURTEENTH SEPARATE DEFENSE

The claims of Plaintiff are barred by unclean hands.

### FIFTEENTH SEPARATE DEFENSE

The claims of Plaintiff are barred by economic duress.

### SIXTEENTH SEPARATE DEFENSE

There is no basis in law or fact for Plaintiff to maintain Jam Labels and Cards LLC as a party to this action and, as such, Jam Labels and Cards LLC must be dismissed with prejudice from this action.

### COUNTERCLAIM

Defendants/Counterclaimants A&M Cards, Inc. ("A&M"), incorrectly pled by Plaintiff as "Jam Labels and Cards LLC d/b/a A&M Cards", Arthur Aaron ("Aaron") and Marc Steinberg ("Steinberg") (collectively, "Defendants") by their attorneys, Phillips Nizer LLP, by way of Counterclaim against Plaintiff Kare Distribution, Inc. ("Plaintiff"), herein alleges as follows:

**12**

1079964.1

## NATURE OF THE COUNTERCLAIM

1.      Defendants' counterclaim against Plaintiff, in order to, among other things, prevent the injustice that would result to Defendants if Plaintiff were permitted to repudiate a course of conduct and several oral agreements upon which Defendants relied to their detriment. Specifically, relying upon the conduct and repeated representations of Plaintiff, Defendants invested several hundred thousand dollars to enable Defendants to provide, among other things, printing services for Plaintiff. Over the years, Plaintiff explicitly demanded more and more of Defendants as to Defendants' ability to meet, among other things, the specific printing and storage needs of Plaintiff, including, but not limited to, the "picking and packing" needs of Plaintiff. Defendants reasonably relied upon such conduct and promises, ultimately to their detriment. Plaintiff cannot now be permitted to repudiate their prior conduct and their repeated promises and representations.

## JURISDICTION AND VENUE

2.      Jurisdiction of this cause is based upon diversity of citizenship under 28 U.S.C. Sec. 1332, with the matter in controversy exceeding the sum of $75,000.00, exclusive of interest and costs.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. Sec. 1391(a)(2), because this judicial district is where a substantial part of the events or omissions giving rise to the counterclaim occurred.

## THE PARTIES

4.      A&M is a corporation incorporated under the laws of the State of New Jersey,

**13**

1079964.1

with its principal place of business located at 5 Horizon Road, Suite 711, Fort Lee, New Jersey.

5.      A&M is in the business of, among other things, providing commercial printing services.

6.      Aaron is an individual residing at 5 Horizon Road, Suite 711, Fort Lee, New Jersey.

7.      Steinberg is an individual residing at 99 Magnolia Avenue, Tenafly, New Jersey. Aaron and Steinberg are the sole owners of A&M.

8.      Upon information and belief, Plaintiff is a Delaware corporation, with its principal place of business located at 1250 Broadway, New York, New York.

9.      Upon information and belief, Plaintiff is in the business of distributing prepaid telephone cards.

## FACTS COMMON TO ALL COUNTS

### Creation of A&M

10.     In or about 2004, Aaron and Steinberg formed A&M to provide an array of printing services. Aaron and Steinberg had experience in the printing industry and hoped to use their backgrounds to establish a small-sized printing company. The business plan and strategy of A&M, as created by Aaron and Steinberg, was to establish a printing company that would be able to respond to small-sized printing orders.

11.     In that regard, A&M entered into a contractual relationship with a small printing company in Pennsylvania, to which they intended to subcontract their printing orders and act as a broker/middleman for their customers.

12.     After the formation of their company, A&M met with moderate success

**14**

providing printing services to various clients, including those in the prepaid telephone-card industry.

## Establishment of Relationship with Epana Networks, Inc.

13.     In or about late 2004/early 2005, A&M solicited Epana Network, Inc. ("Epana") because of their position as a prepaid telephone-card service provider.

14.     At the time, Epana was in the business of providing "air-time minutes" to smaller companies that printed and distributed phone cards.  In other words, third party companies printed and sold phone cards, and Epana - - for a fee - - uploaded air-time minutes to the phone cards.

15.     At the time that A&M was introduced to Epana, Epana sold "air-time minutes" to several phone-card companies, including Via Communications Group ("VCG").

16.     Aaron and Steinberg met with Epana's CEO and Vice President of Marketing and were advised that, while Epana did not have any printing needs at the time, it intended to enter into the direct prepaid phone-card market and would shortly begin printing and selling their own phone cards.

17.     Epana advised Aaron and Steinberg that its business plan was of the utmost sensitively and secrecy and could not be shared with the general public, because Epana would now be competing with its own customers.

18.     Nevertheless, Epana promised A&M that they would use A&M's services once they began business operations.

## Epana Forms Plaintiff

19.     In late 2004/early 2005, Epana formed Kare as a discrete subsidiary for the

**15**

purposes of distributing, marketing and selling phone cards.

20.     At the time, Kare engaged the services of A&M for the purposes of acting as their exclusive printer of Kare's phone cards.  Because of the extreme sensitivity of Kare's entry into the market, resulting from the direct competition with Epana's customers, Kare did not desire to use multiple printers, and made specific promises and representations to A&M that, during  the initial stages, A&M would be Kare's exclusive printer of phone cards.

21.     During that period, A&M utilized their third-party printing company in order to print Kare's phone cards.

22.     In or about early 2006, Kare's market share and business operations dramatically increased.

**Kare's Promises and Representations**

23.     As Kare's business operations dramatically increased, Kare advised A&M that it would be unable to continue to utilize A&M's services, which A&M had been providing through the small printing company in Pennsylvania, because of its relatively small capacity. However, Kare made specific promises and representations that if A&M purchased or leased its own printing equipment sufficient to service Kare's needs, Kare would utilize A&M for all of their printing needs - - limited only by A&M's capacity to meet Kare's requirements.

24.     In other words, Kare promised and represented to A&M that if it purchased and/or leased additional equipment, Kare would send them all the business they could handle.

25.     Based exclusively upon Kare's promises and representations, A&M leased additional printing presses and other equipment for a total cost in excess of $750,000.  By the end of 2006, A&M's new equipment was operational and Kare immediately increased their

1079964.1

business relationship with A&M to the extent that all of A&M's printing business was devoted to serving Kare and virtually all of Kare's printing business went to A&M.

26.     To the extent that, periodically, A&M still did not have sufficient capacity to provide all of Kare's printing needs, Kare sent certain limited printing business to other local printers.

27.     In addition, during 2007, Kare became aware of a specific distributor located in California who had substantial experience and market connections, and Kare elected to enter into a distributor relationship with this individual.  As part of that relationship, Kare was required to send all of their California printing to a specific California-based printer and, therefore, from that point forward, all of Kare's California printing operations were sent to a California printer.  Nevertheless, a vast majority of the balance of Kare's international printing operations were sent to A&M.

28.     In 2007, once again, Kare approached A&M and advised that it required substantially more space to warehouse its cards after printing but before shipping.

29.     At the time, A&M had been leasing approximately 900-1,200 sq. ft. in a facility in Kearny, New Jersey.

30.     Kare advised A&M that unless it leased a substantially larger facility for the purpose of printing and storage operations, it would no longer be able to do business with A&M but that if it leased a larger warehouse, Kare would continue to use all of A&M's printing and warehousing capacity for its business. A&M was specifically promised that any long-term leasehold expenses would be more than covered by the increased volume of business for the life of any new leases.

1079964.1

31.     Accordingly, in or about May, 2007, in direct reliance upon Kare's promises and representations, A&M leased a 28,500 sq. ft. facility in Jersey City, New Jersey, memorialized by a five (5) year lease terminating in May, 2012.

32.     Kare ultimately stored in excess of 19 million phone cards at A&M's Jersey City facility.  Moreover, Kare utilized A&M's facility as if it were their own distribution center, conducting regular distribution meetings at A&M's facility, and having Kare's employees have essentially free reign of A&M's facility.

33.     In addition, consistent with their promises and representations, Kare continued to increase A&M's printing business by sending them virtually all of their non-California printing business.  In turn, A&M devoted virtually all of their printing business to servicing Kare's needs.

34.     In or about August, 2008, a "shake-up" of Kare's management resulted in the separation of several senior executives and the retention of a new management team.

35.     Kare's new management team conducted a review and audit of the previous management team's operations and invited A&M to attend several meetings at Kare's offices in or about August, 2008.  At that time, for a period of about two weeks, Kare stopped sending A&M any printing business and A&M has no knowledge or information if and where Kare conducted its business during that short period.

36.     Nevertheless, in or about September, 2008, Kare began, once again, to send virtually all of their non-California based printing and warehousing business to A&M, but A&M later discovered that Kare had been negotiating with numerous other printing companies in an attempt to reduce their printing costs and re-negotiate their existing contracts.

1079964.1

37.     In or about February, 2009, Kare, for the first time, advised A&M that unless they drastically reduced their costs, fees, and prices, Kare would no longer send them any printing business and would virtually "run them out of business."

38.     A&M attempted to negotiate a better pricing structure with Kare but it soon became clear that Kare was not interested in reaching a fair and amicable price, but rather was attempting to pit various printing companies against one another hoping to secure sub-market pricing and, ultimately, put A&M out of business.

39.     When it became clear that Kare's best offer would result in mass operational losses to A&M, A&M advised that it could not continue to operate pursuant to the proposed price structure. A&M also reminded Kare of its long-term commitment to send sufficient business to A&M to cover all expenses incurred as a direct result of Kare's promises and representations. Nevertheless, Kare's new management refused to honor those commitments.

40.     Upon information and belief, accordingly, Kare immediately demanded the return of all warehoused cards and began to send all of their printing business to All-State -- a competitor of A&M -- presumably at a significantly reduced cost.

41.     Upon information and belief, it later became clear that All-State -- despite their lower costs -- could not meet A&M's quality and service and, therefore, Kare has since terminated its relationship with All-state and has moved to yet another printing company.

                    *                    *                    *

42.     Kare made specific promises and representations to A&M that if it increased its warehouse space and purchased/leased additional equipment, it would continue to send a vast majority of its printing business to A&M and, at a minimum, would utilize A&M to its fullest

**19**

capacity to ensure that A&M would recover its significant investment in the equipment and hardware required to service Kare's account.

43.    Over the years, A&M never had any significant business other than Kare (nor would Kare allow such) and would never have made the investments had it not been given specific promises and representations that it would be compensated for its investments.

44.    Indeed, the business relationship and history of the transactions between the parties clearly and unequivocally demonstrate the course of conduct between Kare and A&M and clearly supports A&M's claim that it was induced to make these investments based upon Kare's promises and representations.

45.    Indeed, over the last several years, Kare dealt with A&M as if it were virtually its own in-house printing subsidiary and self-contained distribution center.   In addition to warehousing millions of cards at A&M's facility -- after insisting that A&M acquire significantly larger space, and after conducting its distributorship meetings at A&M's facilities, and after gradually and significantly increasing A&M's business by insisting that it acquire expensive printing equipment -- Kare unilaterally and without any legal cause or justification, terminated its relationship with A&M, thereby leaving A&M with substantial debt and obligations relating to the equipment and premises that it leased in reliance upon Kare's promises and representations

## FIRST COUNT

### (Estoppel)

46.    Defendants repeat the foregoing allegations as if set forth more fully at length herein.

1079964.1

47.    As set forth above, Plaintiff engaged in conduct that induced Defendants' reliance, upon which Defendants acted to their detriment.

48.    Plaintiff must be estopped from repudiating its course of conduct upon which Defendants detrimentally relied and, as such, must be held liable for any and all damages suffered by Defendants as a result.

**WHEREFORE,** Defendants demand judgment against Plaintiff for damages, costs of suit, including attorneys' fees, interest and such other relief that the Court deems equitable and just.

## SECOND COUNT

### (Breach of Contract)

49.    Defendants repeat the foregoing allegations as if set forth more fully at length herein.

50.    The conduct of the parties, as set forth above, created a binding and enforceable contract between the parties.

51.    Plaintiff breached its duties and obligations under said contract by wrongfully attempting to terminate its relationship with Defendants.

52.    As a result of Plaintiff's breach of said contract, Defendants have been and continue to be severely damaged and harmed.

**WHEREFORE,** Defendants demand judgment against Plaintiff for damages, costs of suit, including attorneys' fees, interest and such other relief that the Court deems equitable and just.

1079964.1

## THIRD COUNT

(Breach of Duty of Good Faith and Fair Dealing)

53. Defendants repeat the foregoing allegations as if set forth more fully at length herein.

54. The contract between the parties contained an implied covenant of good faith and fair dealing.

55. Plaintiff breached its duty of good faith and fair dealing by its conduct as set forth above.

56. As a result of Plaintiff's breach of said duty, Defendants have been and continue to be severely damaged and harmed.

**WHEREFORE,** Defendants demand judgment against Plaintiff for damages, costs of suit, including attorneys' fees, interest and such other relief that the Court deems equitable and just.

## FOURTH COUNT

(Economic Duress)

57. Defendants repeat the foregoing allegations as if set forth more fully at length herein.

58. The conduct of Plaintiff as set forth above constitutes economic duress.

59. As a result of said economic duress, Defendants have been and continue to be severely damaged and harmed.

**WHEREFORE,** Defendants demand judgment against Plaintiff for damages, costs of

1079964.1

suit, including attorneys' fees, interest and such other relief that the Court deems equitable and just.

## FIFTH COUNT

### (Fraudulent Inducement)

86.     Defendants repeat the foregoing allegations as if set forth more fully at length herein.

87.     Kare induced Defendants to enter into a business relationship, and to acquire and lease expensive equipment and property based upon its specific promise that Kare would send A&M sufficient printing and warehousing business in order to cover the expense of the investments and that it would continue to utilize A&M as its primary printer for as long as the investment expenses were outstanding.

88.     A&M reasonably relied upon Kare's promises and representations by acquiring and leasing the equipment and premises at substantial expense.

89.     Kare's representations were false.

90.     A&M has been damaged in an amount to be determined at trial.

**WHEREFORE,** Defendants demand judgment against Plaintiff for damages, costs of suit, including attorneys' fees, interest and such other relief that the Court deems equitable and just.

## SIXTH COUNT

### (New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1)

91. Defendants repeat the foregoing allegations as if set forth more fully at length herein.

**23**

1079964.1

92.   As detailed above, Kare engaged in unconscionable commercial practices, including breach of contract, and fraudulent inducement.

93.   As set forth herein, Kare's conduct constitutes unconscionable commercial practices and, therefore, violates the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1, et seq.).

94.   A&M has sustained ascertainable losses as a result of Kare's violation of the Consumer Fraud Act.

**WHEREFORE,** Defendants demand judgment against Plaintiff for damages, treble damages,  costs of suit, including attorneys' fees, interest and such other relief that the Court deems equitable and just.

> **PHILLIPS NIZER LLP**
> 25 Main Street
> Suite 601 A
> Hackensack, New Jersey 07601
> 201.487.3700
> 201.646.1764 *telecopy*
> Attorneys for Defendants/Counterclaimants

Dated:  May 15, 2009

/s/ N. Ari Weisbrot
N. Ari Weisbrot

1079964.1