UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KARE DISTRIBUTION, INC., | : | |
| | : | Civil Action No. 09-00969 (SDW) (MCA) |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| JAM LABELS AND CARDS LLC d/b/a A&M CARDS, ARTHUR AARON and MARC STEINBERG, | : | January 30, 2012 |
| Defendants. | : | |

**WIGENTON**, District Judge.

Before the Court is Plaintiff/Counterdefendant Kare Distribution, Inc.'s ("Kare" or "Plaintiff") Motion for Summary Judgment and Defendants/Counterclaimants Jam Labels and Cards LLC d/b/a A&M Cards ("A&M Cards"), Arthur Aaron ("Aaron") and Marc Steinberg's ("Steinberg") (collectively "A&M" or "Defendants") Cross-Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(c). This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). Venue is proper pursuant to 28 U.S.C. § 1391. These Motions are decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons stated below, this Court grants in part, and denies in part Plaintiff's Motion and grants Defendants' Cross-Motion.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

Kare is the direct distributor of prepaid phone cards provided by its parent company, Epana Networks, Inc. ("Epana"). (Pl.'s First Am. Compl. ¶ 8 (hereinafter "Am. Compl.").)

---

[1] Portions of this Opinion's factual recitation are taken from this Court's October 8, 2009 Opinion in this matter: Kare Distrib. v. Jam Labels & Cards LLC, Civ. A. No. 09-969, 2009 U.S. Dist. LEXIS 94600 (D.N.J. Oct. 8, 2009).

1

Epana entered the international phone card business in 2002. (Id.) In or about 2004, Aaron and Steinberg formed A&M to provide "small-sized" printing services. (Defs.' Answer and Countercl. (hereinafter "Defs.' Countercl.") ¶ 10; Saenz Decl. Ex. B, Steinberg Dep. 10:20-18.) For that purpose, A&M entered into a contractual relationship with a small printing company in Pennsylvania, whereby A&M acted as a broker and subcontracted the printing orders they received from their customers. (Defs.' Countercl. ¶¶ 10, 11.)

In or about late 2004 or early 2005, Kare and A&M entered into an oral agreement in which A&M agreed to provide printing services for Kare's prepaid phone card business. (Defs.' Countercl. ¶ 20.) The parties never entered into a formal written agreement; however, the nature of their relationship is evidenced by their course of dealings and communications. (Id.; Am. Compl. ¶ 15.) Kare ordered cards from A&M by sending A&M a purchase order, to which A&M would respond with an invoice. (Am. Compl. ¶ 16.) Kare took ownership of the cards upon receipt of payment for the corresponding invoice by A&M. (Id.) At this time, A&M still subcontracted Kare's printing orders to A&M's third-party small printing company. (Defs.' Countercl. ¶ 21.)

By early 2006, Kare's market share and business operations had increased significantly (Id. ¶ 22.) As a result, A&M alleges that Kare, on two separate occasions, advised A&M that it would be unable to continue utilizing A&M as Kare's printer unless A&M increased their printing capacity. (Id. ¶¶ 23, 28.) The first occurred in 2006 when Kare required that A&M purchase or lease printing equipment sufficient to service Kare's needs. (Id. ¶ 23.) In return, A&M alleges that "Kare[, through Karen Vander[2] ("Vander"),] made specific promises and

---

[2] Vander was Kare's Vice President of operations and compliance at this time. Her responsibilities included making decisions pertaining to the purchase of printing services and other services A&M provided to Kare; managing inventory; facilitating orders; and managing the shipment and warehousing of the printed cards. (Frisch Decl. Ex. A, Vander Dep. 27:15-28:9.) Additionally, she was in charge of Kare's relationship with A&M.

representations that if A&M purchased or leased its own printing equipment sufficient to service Kare's needs, Kare would utilize A&M for all of their printing needs - - limited only by A&M's capacity to meet Kare's requirements." (Id. (emphasis in original); Saenz Decl. Ex. C Steinberg Dep. 207:6-11.) Defendants assert that in an effort to meet Plaintiff's printing needs, A&M formed JAM Labels ("JAM"), a phone card and label printing company, because the printing company Defendants were using previously could not meet their printing capacity. (Saenz Decl. Ex. D-1, Aaron Dep. 37:1-4, 38:5-10.) A&M also alleges that, based exclusively on Kare's promises, A&M leased additional printing equipment totaling over $750,000. (Defs.' Countercl. ¶ 25.)

The second occasion transpired in 2007 when Kare allegedly informed A&M that it required more space to warehouse its cards (after printing but pre-shipping). (Id. ¶ 28.) Consequently, Kare requested that A&M lease a significantly larger facility for its printing and storage operations or Kare would no longer be able to do business with A&M. (Id. ¶ 30.) Additionally, A&M alleges that Kare promised that if A&M consented to its request, Kare would continue to use A&M for all of its printing needs and that any long-term leasehold expenses incurred by A&M would be more than covered by the increased volume in A&M's business. (Id.) Accordingly, in April 2007, A&M leased a new 28,500 sq. ft. facility in Jersey City, New Jersey, memorialized by a five (5) year lease terminating in May 2012. (Saenz Decl. Ex. Y; Defs.' Countercl. ¶ 31.) Consistent with both of Kare's alleged promises, in 2006 and 2007, it is undisputed that Kare continued to use and increase A&M's business by sending them virtually all of their printing business. (Defs.' Countercl. ¶ 33.)

In or about September 2008, Kare restructured its management team due to the loss of several executives and, in September 2008, placed Jay Adams ("Adams") in charge of its

relationship with A&M.  (Am. Compl. ¶ 19.)  After reviewing A&M's pricing, Adams concluded that Kare could negotiate a better rate.  (Id.; Defs.' Countercl. ¶ 36.)  Consequently, around October 2008, Kare advised A&M that A&M would have to reduce its costs, among other things, in order to continue their business relationship.  (Am. Compl. ¶ 27; Defs.' Countercl. ¶ 37, Saenz Decl. Ex. D-2, Aaron Dep. 245:15-22.)  Ultimately, after a period of negotiation during which the parties continued their business relationship, Kare and A&M were unable to reach a final agreement regarding A&M's pricing.  (Am. Compl. ¶¶ 31-32; Defs.' Countercl. ¶ 39.)  The parties terminated their relationship in February 2009.  (Am. Compl. ¶ 15.)  Thereafter, Kare immediately requested the return of all warehoused cards.  (Id. ¶ 37; Defs.' Countercl. ¶ 40.)  A&M refused.  (Am. Compl. ¶ 37.)

Accordingly, on March 4, 2009, Kare initiated this action.  On March 24, 2009, Kare filed its First Amended Complaint ("FAC"), seeking damages for (1) Conversion, (2) Replevin, (3) Breach of Contract, (4) Unjust Enrichment, (5) Tortious Interference with Contract, (6) Breach of the Duty of Good Faith and Fair Dealing, and (7) Fraud.  On May 15, 2009, Defendants answered the FAC and filed Counterclaims for (1) Estoppel, (2) Breach of Contract, (3) Breach of the Duty of Good Faith and Fair Dealing, (4) Economic Duress, (5) Fraudulent Inducement, and (6) Violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1 et seq.

On June 11, 2009, Kare filed a Motion to Dismiss A&M's economic duress, fraudulent inducement and NJCFA claims and to strike Aaron and Steinberg as counterclaimants from all Counts.  (Docket Entry No. 23).  Subsequently, on June 22, 2009, A&M filed a Cross-Motion to Dismiss Kare's claims against the Individual Defendants.  (Id. at 27).  On October 8, 2009, this Court granted Kare's Motion to Dismiss A&M's counterclaims for fraudulent inducement and

4

violation of the NJCFA. This Court also concluded that although A&M's allegations did not support a claim for economic duress, it would grant Defendants "leave to amend their claim for economic duress for the limited purpose of detailing the circumstances under which they agreed to Kare's request to lower their prices."[3] Kare Distrib., 2009 U.S. Dist. LEXIS 94600, at *19, *29. However, the Court denied Kare's motion to strike Aaron and Steinberg as counterclaimants. Id. at *29. Additionally, it denied A&M's Cross-Motion to Dismiss the claims against the Individual Defendants. Id.

Subsequently, A&M returned the warehoused cards after Kare paid $10,000 to cover the cost of the return. (Docket Entry No. 122). As a result, on August 24, 2011, Kare filed a stipulation of dismissal with prejudice as to its replevin, unjust enrichment, and tortious interference claims. (Id.).

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." Id. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The dispute is not genuine if it merely involves "some metaphysical

---

[3] Although Defendants were given the opportunity to amend this claim, they did not do so. Consequently, that claim is dismissed.

doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp., 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." Black Car Assistance Corp. v. New Jersey, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

**DISCUSSION**

1. Kare's Motion for Summary Judgment

    a. Breach of Contract

To sustain a breach of contract claim, A&M must establish: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that [A&M] performed its own contractual obligations." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007). Kare maintains that it has not breached the alleged oral contract because "A&M more than recouped its investment." (Pl.'s Br. 14.) Kare's argument is based on its interpretation of the alleged contract. According to Kare, A&M's argument is that "Kare stopped sending A&M work before A&M was able to recoup the amount that it invested in new equipment and a larger warehouse space." (Id. at 12.)

However, A&M's version of the alleged contract is different. Defendants allege that "Kare made specific promises and representations that if A&M purchased or leased its own printing equipment sufficient to service Kare's needs, Kare would utilize A&M for all of their printing needs - - limited only by A&M's capacity to meet Kare's requirements." (Defs.' Countercl. ¶ 23.) Additionally, according to Steinberg, Vander allegedly promised that if A&M "purchased the equipment or leased the equipment to service their [(Kare's)] needs, then they would utilize us for as much printing as we can handle." (Saenz Decl. Ex. C; Steinberg Dep. 207:8-11.) Therefore, from A&M's point of view, the only time Kare could send its printing work to another printing company would be if A&M could not meet Kare's printing needs. Thus, Kare's assertion that A&M "more than recouped its investment" is irrelevant because Defendants' version of the contract does not measure performance based on the recoupment of their investment. It is obvious that the exact terms of the alleged contract are in dispute and there

7

is a genuine issue of fact as the nature of the promise Vander allegedly made.

Similarly, Kare's argument that it should be granted summary judgment because A&M cannot prove damages suffers from the same flaw as its contention that there was no breach. "Compensatory damages are intended to recompense the injured claimant for losses due to the breach, that is, to give the innocent party the benefit of the bargain." Donovan v. Bachstadt, 91 N.J. 434, 444 (1982). Although Kare goes to great lengths to convince this Court that A&M cannot identify any damages it has suffered, this Court concludes that there is a genuine issue of material fact as to the benefit A&M was supposed to derive from the contract. Because the exact terms of the contract are in dispute, it is impossible to determine whether the profits Kare alleges A&M made are sufficient to put A&M "in as good a position as [it] would have had if performance had been rendered as promised." Id. (quoting 5 Corbin, Contracts § 992 (1951) (internal quotation marks omitted)). In this regard, it is irrelevant if A&M and JAM are different entities or if JAM bore a significant share of the costs for the new investments, as Kare suggests.

    b. Estoppel

To recover on a claim of promissory estoppel, A&M must prove: "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington, 194 N.J. 223, 253 (2008) (citing Lobiondo v. O'Callaghan, 357 N.J. Super. 488, 499 (App. Div. 2003)). Kare maintains that it should be granted summary judgment because Defendants "cannot prove any damages." (Pl.'s Br. 20.) As indicated earlier, there is a genuine issue of material fact as to the damages A&M incurred. As a result, this Court cannot grant summary judgment on this claim.

8

    c. Breach of the Implied Duty of Good Faith and Fair Dealing

  New Jersey courts have recognized that an implied covenant of good faith and fair dealing exists in every contract. R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255, 276 (2001). This duty requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Ass'n Grp. Life, Inc. v. Catholic War Veterans, 61 N.J. 150, 153 (1972) (internal quotation marks omitted). The duty of good faith is "independent [] and may be breached even where there is no breach of the contract's express terms." Emerson Radio Corp. v. Orion Sales, Inc., 80 F. Supp. 2d 307, 311 (D.N.J. 2000), rev'd, in part, on other grounds, 253 F.3d 159 (3d Cir. 2001). The duty is breached if a party "acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 288 (3d Cir. 2000). Additionally, "[t]he Restatement and [New Jersey] cases note a state of mind or malice-like element to breach of good faith and fair dealing, holding that the duty excludes activity that is unfair, not decent or reasonable, nor dishonest." Emerson Radio Corp., 80 F. Supp. 2d at 311.

  A&M asserts that Kare breached the duty of good faith and fair dealing because some of Kare's employees acted maliciously toward A&M and intended to cause harm to A&M. (Defs.' Opp'n Br. 17.) Defendants point to emails in which: (1) Josh Loberfeld ("Loberfeld"), a Kare employee called Steinberg an unsavory name and stated he "[c]an't stand" Steinberg, (Frisch Decl. Exs. E, H); (2) Adams stated he "can[']t stand" Aaron and Steinberg, (id. at Ex. J); and (3) Loberfeld and Adams declared that Steinberg and Aaron earned a substantial amount of money from their relationship with Kare. (Id. at Exs. I, K.) However, such statements, at most, merely indicate that Loberfeld and Adams disliked Steinberg and Aaron. Such conduct is insufficient to

sustain a claim for the breach of the duty of good faith absent a showing of "improper motive." Wilson v. Amerada Hess Corp., 168 N.J. 236, 251 (2001). Furthermore, although Kare was splitting its orders between A&M and other companies as of September 2008, (id. at Ex. M), A&M has not produced any evidence indicating that Kare was dishonest about its actions. Moreover, even if Adams did "gloat[] over the fact that A&M was going down," (Defs.' Opp'n Br. 18), A&M has failed to show that Kare's attempt to negotiate a better price with A&M was pretext to terminate the relationship or drive A&M out of business. Consequently, this Court concludes that Kare is entitled to summary judgment on this claim.

2. A&M's Cross-Motion for Summary Judgment

    a. Breach of Contract

Kare's breach of contract claim is two-fold.[4] (See Am. Compl. ¶ 66.) First, Kare asserts that there were serious quality control issues with the cards A&M printed. For instance, Plaintiff maintains that when it received the El Chavo brand cards from A&M in 2008, the cards did not match the proof and "[t]here was black spotting throughout the card[s] and colors running into each other." (Jahn Decl. ¶¶ 3-4.) According to Kare, Steinberg and Aaron conceded that their press could not print the requisite quality. As a result, Kare had to give the print job to another printer. (Id. ¶ 5.) Plaintiff also maintains that A&M failed to print Kare's Astral brand card in the colors Kare requested. Therefore, Plaintiff had to use another printer. (Id. ¶ 6.) Additionally, Plaintiff states that it had color problems with the Digame and J-Daddy cards A&M printed. (Id. ¶ 7.) Kare also asserts that the coupons A&M printed were the wrong size, incorrectly colored, and had poor quality. (Id. ¶ 8.) Furthermore, Kare contends that A&M's

---

[4] Initially, Kare also alleged that A&M breached their agreement because A&M refused to deliver the pre-paid phone cards it had printed for Kare. (Am. Compl. ¶ 66.) However, A&M has returned the cards to Kare. Consequently, that claim is moot.

10

promotional items were "often unusable." (Id. ¶ 9.)

Although Kare maintains that Defendants' quality control issues "resulted in hundreds of thousands of dollars of inventory that Kare could not use," (id. ¶ 10), it has failed to allege or establish that it was actually harmed by its inability to use the unsatisfactory inventory. As Kare correctly noted, proof of damages is essential to a breach of contract claim. (Pl.'s Br. 14.) Furthermore, other than the bald conclusory statements contained in Lydia Jahn's declaration, Kare does not provide any evidence to support its assertion that it had hundreds of dollars of unusable inventory. Plaintiff's burden at this stage requires "more than just bare assertions, conclusory allegations or suspicions." Podobnik, 409 F.3d at 594 (internal quotation marks omitted). As Kare has pointed out, (see Pl.'s Br. 12), "[t]he Supreme Court has unequivocally stated that the object of Rule 56(e) 'is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.'" Khrakovskiy v. Denise, Civ. A. No. 06-1033, 2009 U.S. Dist. LEXIS 96650, at *26 (D.N.J. Oct. 19, 2009) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)). Kare's failure to demonstrate that it suffered any damages as a result of A&M's alleged quality control problems is detrimental to its breach of contract claim.

Second, Kare claims that A&M breached the contract because A&M charged Kare for shipping even though the parties agreed that A&M would provide Kare with free shipping. (Am. Compl. ¶¶ 30-32.) According to Plaintiff, A&M promised to give it free shipping without a printing or shipment quantity. (Id. ¶¶ 30-31). However, the record does not support Kare's allegation. On December 18, 2008, Loberfeld asked Steinberg to "remind [him] of the agreement [they] made on shipping cost[.]" (Saenz Supplemental Decl. Ex. PP.) In response, Steingberg stated: "[w]e will pay for all cards printed from Nov 1 and we will pay for shipping

for cards after Nov 1 so long as you ship 25k to a location." (Id.)  Additionally, in a January 29, 2009 email, Adams acknowledged that "all of the old cards that are at A and M and all new cards from A and M that ship in under 25k quantities we are still being charged for." (Frisch Decl. Ex. L.)  Hence, Plaintiff was entitled to free shipping under limited circumstances: cards printed after November 1, 2008, that were shipped in quantities over 25,000.

Because the parties' free shipping arrangement applied only to cards printed after November 1, 2008, that met the minimum shipping quantity requirement, Plaintiff's claim that A&M breached the shipping arrangement is valid only if A&M charged for cards falling within the purview of the agreement.  However, Kare does not provide specific information about the circumstances surrounding A&M's alleged breach of the shipping agreement.  For instance, Plaintiff does not specify the timeframe within which Defendants breached the shipping arrangment.  Similarly, Kare does not indicate if the cards A&M shipped met the minimum quantity requirement.  Kare bears the burden of establishing that A&M breached the shipping arrangement, see Murphy v. Implicito, 392 N.J. Super. 245, 265 (App. Div. 2007) (citation omitted), and its conclusory assertions are insufficient to meet that burden.  See Podobnik, 409 F.3d at 594 (internal quotation marks omitted).  Thus, Defendants are entitled to summary judgment on this claim.

b. Breach of the Implied Duty of Good Faith and Fair Dealing

Kare contends that A&M breached the implied duty of good faith and fair dealing.  However, Plaintiff's claim is duplicative of its breach of contract claim because it is based on the same set of facts.  In "New Jersey, a plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract or the cause of action arises out of the same conduct underlying the alleged

breach of contract." Hahn v. OnBoard LLC, Civ. A. No. 09-3639, 2009 U.S. Dist. LEXIS 107606, at *15 (D.N.J. Nov. 16, 2009) (citing Wade v. Kessler Inst., 172 N.J. 327 (2002); ICD Holdings S.A. v. Frankel, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997)). A&M is entitled to summary judgment because Kare has not alleged facts that support an independent claim for the breach of the duty of good faith and fair dealing.

    c. Conversion

"Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Chicago Title Ins. Co. v. Ellis, 409 N.J. Super. 444, 454 (App. Div. 2009), certif. denied, 200 N.J. 506 (2009) (citation omitted). To establish a claim for conversion plaintiff must demonstrate: "(1) the existence of property, (2) the right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant." Corestar Int'l PTE. Ltd. v. LPB Commc'ns, Inc., 513 F. Supp. 2d 107, 127 (D.N.J. 2007).

Here, Kare is not seeking for the cards to be returned or for the value of the cards. Kare's claim is based on recouping the $10,000 it paid to A&M for shipping the cards. (Pl.'s Opp'n Br. 26-27.) However, as Defendants correctly point out, "in an action for the conversion of chattels the rule of damages is limited to the value of the chattels converted." Tessmar v. Grosner, 23 N.J. 193, 202 (1957); see also One Step Up, Ltd. v. Sam Logistic, Inc., 419 N.J. Super. 500, 512 (App. Div. 2011) (affirming the trial court's determination in a conversion claim that the plaintiff is entitled to the value of the goods converted); Bank of N. Am. v. Bank of Nutley, 94 N.J. Super. 220, 227 (Law Div. 1967) (concluding that "[s]ince the action is in conversion, the measure of damages is the reasonable value of the [item] at the time of conversion."). Because

A&M has returned the cards and Kare has not alleged that it suffered a loss in value, Kare has no basis to seek damages under the theory of conversion. Although the parties' agreement gives Kare the right to recover the $10,000 it provided for the shipment of the cards, conversion is not the appropriate theory to resolve that dispute. Consequently, A&M is entitled to summary judgment on Kare's conversion claim.

    d. Fraud

To establish a claim for common law fraud Kare must prove: "a material misrepresentation by the defendant of a presently existing fact or past fact; knowledge or belief by the defendant of its falsity; an intent that the plaintiff rely on the statement; reasonable reliance by the plaintiff; and resulting damages to the plaintiff." Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 175 (2006).

Plaintiff initially alleged that Defendants intentionally defrauded Kare because A&M marked up invoices for third party shredding services and Plaintiff relied on Defendants' "representation that the invoice was accurate." (Am. Compl. ¶ 44.) However, in response to A&M's assertion that Kare cannot demonstrate that "A&M made any representation that the invoices were not marked up," (Defs.' Br. 22), Kare now argues that its claim is based on Defendants' failure to disclose the mark up. (Pl.'s Opp'n Br. 27-28.) Kare's fraud claim is based on one invoice from American Shredder that A&M marked up from $1,177 to $6,529. (Id. at 28.)[5]

Regardless of whether Kare's fraud claim is based on A&M's alleged affirmative representation or omission, this Court concludes that A&M is entitled to summary judgment because Kare has failed to establish reliance. During Vander's deposition, she testified about her

---

[5] Kare asserts that the American Shredder invoice is an example of "thousands of invoices for third party charges" that A&M marked up, (Pl.'s Opp'n Br. 28); yet, Kare does not present or identify other invoices A&M marked up.

14

knowledge of A&M's mark ups:

> Q. Did you ever have any conversations with A&M about whether A&M would charge a fee on top of whatever the third parties cost was for sourcing these items for you?
> A. There was never a conversation. It was obvious.
> Q. What was obvious?
> A. That they would make a profit on it as well.
> Q. Did you have any understanding as to what percentage profit A&M would make?
> A. Not that I recall.
> Q. Did you have any percentage in your mind that you deemed reasonable?
> A. No. We sourced it and received bids from several vendors so that was really the basis of the decision.

(Frisch Decl. Ex. A, Vander Dep. 71:5-22.)

Vander was aware that A&M was marking up the prices. Nonetheless, she opted to have A&M perform the services. See Ideal Dairy Farms v. John Labatt Ltd., Civ. A. No. 92-2469, 1995 U.S. Dist. LEXIS 10310, at *21 (D.N.J. May 11, 1995) (concluding that the plaintiff could not establish a fraud claim because it knew it was overcharged), aff'd in part, rev'd in part on other grounds, 90 F.3d 737 (3d Cir. 1996). Moreover, Vander testified that A&M's prices were comparable to the bids Kare received from other vendors, and that was the basis of her decision. (Frisch Decl. Ex. A, Vander Dep. 71:20-22.) She also stated that although she knew A&M and other vendors marked up their prices, her decision to use A&M was not based on the percentage of the mark up but rather on price, supply time and quality. (Id. at 75:14-22.) Additionally, Vander's testimony that A&M's prices were comparable to its competitors directly contradicts Kare's argument that it would not have paid the invoice and it would have chosen another company to perform the service if it knew about the mark up. (Pl.'s Opp'n Br. 28; Ravtiz Decl. ¶ 5.) Thus, A&M is entitled to summary judgment on this claim.

**CONCLUSION**

For the reasons stated above, Kare's Motion for Summary is GRANTED in part and DENIED in part, and A&M's Cross-Motion for Summary Judgment is GRANTED.

s/ Susan D. Wigenton, U.S.D.J.

cc:     Magistrate Judge Madeline C. Arleo